Mark D. Nielsen, Esq., CA Bar No. 210,023
   *mark.nielsen@solidcounsel.com*
SCHEEF & STONE, LLP
2600 Network Boulevard, Suite 400
Frisco, Texas 75034
Telephone: (214) 472-2100
Fax: (214) 472-2150

Daniel M. Cislo, Esq., CA Bar No. 125,378
   *dan@cislo.com*
C. Wook Pak, Esq., CA Bar No. 244,780
   *wpak@cislo.com*
CISLO & THOMAS LLP
12100 Wilshire Boulevard, Suite 1700
Los Angeles, California 90025
Telephone: (310) 451-0647
Fax: (310) 394-4477

Attorneys for Plaintiff,
Nanjing Nutrabuilding Bio-Tech Co., Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANJING NUTRABUILDING BIO-TECH CO., LTD., <br><br> Plaintiff, <br><br> vs. <br><br> BONERGE LIFESCIENCE (HUNAN) CO., LTD., and DOES 1-9, INCLUSIVE, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **[DEMAND FOR JURY TRIAL]** |

# COMPLAINT FOR PATENT INFRINGEMENT

For its complaint, Plaintiff Nanjing Nutrabuilding Bio-Tech Co., Ltd. alleges as follows:

## PARTIES

1. Plaintiff Nanjing Nutrabuilding Bio-Tech Co., Ltd. ("Plaintiff" or "NNB") is a company organized under the laws of the People's Republic of China with a place of business at No. 270 Jiqingmen Street, Suning Huigu, Building E6, Room 2105, Nanjing, China 210017.

2. Defendant Bonerge Lifescience (Hunan) Co., Ltd. ("Defendant" or "Bonerge") is a business entity, on information and belief, formed under the laws of the People's Republic of China, with a place of business in this judicial district at 2049 S. Hellman Ave, Unit A, Ontario, California 91761. In addition, Bonerge may have places of business having the addresses of either Bldg # 7B, Depu Parkview, E&D Zone, Changsha, Hunan China 414000, or Room 102, Building 7, Depu Wuhe Enterprise Park, Changsha City, Hunan, China, or Room 102, Building 7, Phase 1, Depu Wuhe Enterprise Park, No.1, NO.3 LuoSitang Road, Changsha, Hunan, Changsha, Hunan 410000, CN, which each may be the same location.

3. The true names and capacities, whether individual, corporate, or otherwise of Defendants Does 1-9 inclusive, are unknown to Plaintiff, who therefore sues them by such fictitious names. Plaintiff will seek leave to amend this complaint to allege their true names and capacities when they have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged. At all times herein mentioned, Defendants Does 1-9 inclusive were the agents, servants, employees or attorneys of their co-defendants, and in doing the things hereinafter alleged were acting within the course and scope of their authority as those agents, servants, employees or attorneys, and with the permission and consent of their co-

defendants.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1338(a) as it arises under Acts of Congress related to patents.

5. On information and belief, Bonerge attended and exhibited (in Booth 4182) the Natural Product Expo West trade show in this judicial district in Anaheim, California to promote its products, including the product accused herein of infringing NNB's patent. Bonerge posted an article on its website on or about April 28, 2024 about its attendance at this show. See https://bonerge.com/site-List-7.html and https://bonerge.com/index/Article/show/cat_id/7/id/24. See **Exhibits 1-2**, attached hereto.

6. Bonerge, holding themselves out as Bonerge Lifescience on LinkedIn also posted about its attendance at the Nature Product Expo West, including referencing the accused product in this case. On information and belief, the trade show referenced by Bonerge occurred on or about March 13-16, 2024 in this judicial district at the Convention Center in Anaheim, California. See **Exhibits 3-5**, attached hereto.

7. Also, according to Bonerge's LinkedIn page, it has "associated members" in this judicial district, including Jack Chen. Jack Chen's LinkedIn page indicates he is in Los Angeles, California. See **Exhibits 6-7**, attached hereto.

8. In addition, in a press release by Bonerge dated July 31, 2024, Bonerge identifies as its "Contacts" a Cecilia Yang having an email address of sales@bonerge.com and a telephone number of (949) 712-7328, and (949) is an Orange County, California area code. See **Exhibit 8**, attached hereto.

9. Furthermore, on Bonerge's website (www.bonerge.com), the footer of most, if not every, page of the website appears as follows,

[Bonerge website header image with Quick Links, Our Products, and Contact Info including address 2049 S. Hellman Ave, Unit A, Ontario CA 91761, USA; phone +1 (949) 712-7328; email sales@bonerge.com]

and contains contact information that precisely corresponds to Cecilia Yang's contact information on Bonerge's press release referenced above in Exhibit 8. The same footer also contains an address in this judicial district at 2049 S. Hellman Ave, Unit A, Ontario California 91761. Thus, Bonerge has a physical presence in this judicial district. The "Contact" tab on Bonerge's website also contains the same information. *See* **Exhibit 9**, attached hereto.

10. The foregoing demonstrates that Bonerge actively markets, offers to sell, and on information and belief, sells its products in and through this judicial district, including the accused dihydroberberine product; and, it does so with full understanding and intention that its dihydroberberine product will be compounded into tablets or capsules and used in product sold by its customers to end users for purposes of managing glucose tolerance, managing blood glucose levels, related metabolic benefits, and weight loss.

11. Accordingly, this Court has personal jurisdiction over Bonerge in that, on information and belief, Bonerge has committed, and continues to commit, acts of direct and/or indirect infringement in violation of 35 U.S.C. § 271 in this judicial district, by having a physical presence in this judicial district at 2049 S. Hellman Ave, Unit A, Ontario California 91761, by placing products, including the accused infringing product, into the stream of commerce from this judicial district, with the knowledge and understanding that such products are used, imported, offered for sale, and/or sold in this judicial district and elsewhere in the U.S.

12. Venue is proper in this judicial district as to Bonerge pursuant to 28 U.S.C. § 1400(b) in that Bonerge resides in this judicial district at 2049 S. Hellman Ave, Unit A, Ontario California 91761 and/or Bonerge has committed acts of

infringement in this judicial district as detailed herein, and has a regular and established, physical place of business in this judicial district at 2049 S. Hellman Ave, Unit A, Ontario California 91761. On information and belief, the accused product referenced herein is at least imported, shipped to, stored in, and shipped from Bonerge's facility in Ontario, California to customers in the U.S., including at least, on information and belief, Nature's Fusions of Orem, Utah.

## FACTUAL ALLEGATIONS

13. NNB owns United States Patent No. 10,278,961 (the "'961 Patent") by virtue of several assignments. The '961 Patent is attached hereto as **Exhibit 10**. The '961 Patent may also be referred to herein as the "patent-in-suit."

14. The '961 Patent, entitled "Administration of Berberine Metabolites," which issued on May 7, 2019, was filed on April 19, 2017 as U.S. Patent Application No. 15/291,933, which itself claims priority to U.S. Provisional Application No. 62/324,794, filed on April 19, 2016.

15. The patent-in-suit describes berberine metabolites, including dihydroberberine, and its administration of pharmaceutically effective amounts of berberine metabolites, including dihydroberberine, to manage and improve glucose tolerance and related metabolic issues (e.g., metabolic syndrome).

16. On or about September 12, 2024, NNB, through counsel, provided written notice of the infringement of the patent-in-suit via a letter to Bonerge. *See* **Exhibit 11**, attached hereto. The letter was delivered to Bonerge on or about September 25, 2024.

17. On or about October 29, 2024, NNB, through counsel, sent a second letter to Bonerge regarding allegations of infringement of the patent-in-suit by Bonerge. *See* **Exhibit 12**, attached hereto.

18. To the best of NNB's knowledge, Bonerge did not respond to either of these letters.

19. On or about November 5, 2024, NNB, through counsel, provided written notice of the infringement of the patent-in-suit via a letter attached to an email to Nature's Fusions or Orem, Utah. *See* **Exhibit 13**, attached hereto. Exhibit 14, *infra*, shows the emailing of this letter on November 5, 2024.

20. On or about November 6, 2024, Nature's Fusions, in turn, via email from Matt Peterson (matt@naturesfusions.com) to NNB's counsel added a representative of Bonerge to the email thread (allen.g@bonerge.com) and stated in part to NNB's counsel, "You can speak with the manufacturer of the ingredient we use in our product. Allen from Bonerge." *See* **Exhibit 14**, attached hereto.

21. The next day (November 6, 2024), Matt Peterson further responded and added Cecilia.Y@bonerge.com to the email thread and stated, "Cecilia from our manufacturer, who has also worked extensively with U.S. patent laws, is copied here and available for further questions." *See* **Exhibit 14**.

22. Accordingly, multiple representatives of Bonerge were given actual notice of the accusations of infringement of one or more of the claims of the '961 Patent by no later than November 6, 2024, but more likely by no later than on or about September 25, 2024.

23. On information and belief, Bonerge makes, uses, imports, offers to sell, and/or sells its dihydroberberine product in the U.S. with full understanding and intention that its dihydroberberine product will be compounded into tablets or capsules and used in product sold by its customers to end users for purposes of managing glucose tolerance, managing blood glucose levels, related metabolic benefits, and weight loss. *See* **Exhibits 15-18**, attached hereto.

24. By way of example only, and without waiving any right to assert infringement of any other claim of the '961 Patent either directly or indirectly, claim 1 reads: "A method of managing glucose tolerance in an individual, the method comprising: administering, to an individual, a pharmaceutically effective amount of dihydroberberine, wherein the pharmaceutically effective amount of

dihydroberberine comprises approximately 25 mg to approximately 800 mg of dihydroberberine."

25. By way of example only, and without waiving any right to assert infringement of any other claim of the '961 Patent either directly or indirectly, claim 2 reads: "The method of claim 1 wherein the administration of dihydroberberine reduces fasting glucose levels."

26. By way of example only, and without waiving any right to assert infringement of any other claim of the '961 Patent either directly or indirectly, claim 5 reads: "The method of claim 1 wherein the dihydroberberine is orally administered as a capsule or tablet."

27. By way of example only, and without waiving any right to assert infringement of any other claim of the '961 Patent either directly or indirectly, claim 7 reads: "The method of claim 1 wherein the dihydroberberine is administered at least once daily."

28. On information and belief, Bonerge imports dihydroberberine into the U.S., stores it at its location in Ontario, California, takes orders from customers (e.g., Nature's Fusions), and ships the dihydroberberine product from its Ontario, California facility to its customers. And, Bonerge at all relevant times herein has done, and does so, knowing full well how its customers and end users will use the dihydroberberine (e.g., as a supplement for healthy metabolism, weight loss, blood sugar control), and intending for the same to occur. Bonerge markets its dihydroberberine product under the name GLUCOSOBER and at all relevant times herein has known, knows, and continues to know full well that dihydroberberine is used to control glucose levels, manage glucose tolerance, and support healthy metabolism. In its federal trademark application for GLUCOSOBER, the identification of goods states:

> Dietary beverage supplements for human consumption in liquid and dry mix form for therapeutic purposes; Dietary

supplement drink mixes; Dietary supplemental drinks; Dietary supplements; Dietary supplements for animals; Dietary supplements for humans; **Dietary supplements for lowering glucose levels**; Dietary supplements in the form of capsules, tablets, caplets, powder, liquids, syrups, gummies, gels and soft chews; **Dietary supplements in the nature of weight loss powders**; Dietary and nutritional supplements; **Dietary and nutritional supplements used for weight loss**; Dietary food supplements; Food supplements; Herbal supplements; Meal replacement bars for weight loss purposes; Nutritional food additives for medical purposes in the nature of natural food extracts derived from plants, fruits and vegetables; Nutritional supplements; **Nutritional supplements for lowering glucose levels**; Nutritional supplements in the form of capsules, tablets, caplets, powder, liquids, syrups, gummies, gels and soft chews; Plant extracts, other than essential oils, for medical, veterinary and pharmaceutical purposes; Plant extracts, other than essential oils, for pharmaceutical purposes; Plant and herb extracts, other than essential oils, for medicinal purposes; Powdered nutritional supplement concentrate; Powdered nutritional supplement drink mix; **Glucose dietary supplements**; Natural dietary supplements; Nutraceuticals for use as a dietary supplement; Nutritional and dietary supplements formed and packaged as bars; Nutritional supplement meal replacement bars for boosting energy; Vitamins and dietary food supplements for animals.

*See* **Exhibit 19**, attached hereto (emphasis added).

29. In addition, inasmuch as Nature's Fusions has admitted that its dihydroberberine manufacturer is Bonerge, Natures Fusions' website recently included a photograph of the bottle of its dihydroberine-containing product as follows (*see* **Exhibits 20-21**, attached hereto):




30. Thus, Nature's Fusions' product is labeled and marketed consistent with Bonerge's statements about dihydroberberine, including the following:

> **Dihydroberberine 97% HPLC**
>
> ★ Berberine is one of the best known and most effective natural Glucose Disposal Agents.
> ★ With large amounts of scientific research showing significant improvements of Berberine to insulin sensitivity, fasting glucose levels, HbA1c reduction, nutrient partitioning, and far more.
> ★ Research suggests that dihydroberberine is up to 5 times better than standard berberine, bringing incredible effects at lower doses - and fewer side effects.
>
> **The Detail**
>
> **Dihydroberberine Helps To Improve Glucose and Lipid Metabolic Health**
> Until now, there are large amounts of scientific research showing that in reduce blood sugar levels; promote lipid conversion; help for loss weight, Dihydroberberine(DHB) has better effect than Berberine(BBR).
>
> **1. Maintain Blood Sugar Standard**
> BBR has been showen to adjust Sugar metabolism in human body through reduced glucose absorption; inhibit gluconeogenesis; regulate insulin levels; active PKC and AMPK.
> DHB shows better effect than BBR in adjust sugar metabolism, a study, which the subjects were mice shows BBR and DHB all can improve 44% insulin sensitivity. Compared with DHB and BBR for improving insulin sensitivity. The results shows that to cause the same reaction with DHB, you need five times more than BBR.
>
> **2. Lipid Metabolism**
> The effect of BBR on fat loss is thought to be related to the improvement of insulin sensitivity and the activation of AMPK enzyme. In addition, BBR has been shown to lower cholesterol levels and thus reduce the risk of heart disease, this is thought to be caused by BBR's inhibitory effect on an enzyme called PCSK9, which when inhibited causes more LDL (bad cholesterol) to be removed from the blood.
> One study compared the pancreatic lipase inhibition of BBR and DHB, the results shows that because of the affinity of DHB is stronger than BBR, the BBR has a lower inhibitory action compared to DHB on pancreatic lipase.
>
> **3. Weight Loss and Prevent Obesity**
> BBR can regulate blood glucose and lipid balance in many ways, indicating that it can help regulate body weight. In one study, subjects were given BBR over time, after 12 weeks, their BMI levels dropped from 31.5 to 27.4. DHB has stronger ability in these aspect,so DHB may be considered a more effective weight-loss aid than BBR.

From: https://www.bonerge.com/index/Article/show/cat_id/10/id/1 (accessed January 22, 2025).

31. Bonerge at all relevant times has been fully aware of the glucose management efficacy of berberine and dihydroberberine and has intentionally marketed its dihydroberberine product to supplement sellers such as Nature's Fusions in order to induce them to formulate it into dihydroberberine-containing supplements in the form of capsules or tablets, for example, to then be sold to end users in the U.S. to enable them to manage their own glucose tolerance and/or reduce fasting glucose levels. In other words, Bonerge is knowingly and intentionally inducing and/or contributing to the infringement of one or more of the claims of the '961 Patent by selling a product it knows will be administered by end users to manage their own

glucose tolerance and/or reduce fasting glucose levels.

32. NNB has not licensed or otherwise authorized Bonerge (or its dealers, distributors, customers, affiliates, or the like) to make, use, import, offer to sell, and/or sell dihydroberberine-containing supplements used for managing glucose tolerance and/or reduce fasting glucose levels. In other words, the making, using, importing, offering to sell, and/or selling of dihydroberberine-containing supplements used for managing glucose tolerance and/or reduce fasting glucose levels by Bonerge (or its dealers, distributors, customers, affiliates, or the like) is unauthorized.

33. Bonerge's infringement of the patent-in-suit is willful. Bonerge has known about the '961 Patent since at least as early as November 6, 2024, but more likely since on or about September 25, 2024, and is not known to have altered its infringing product/system or activities, or the advertising, marketing, and/or promotion thereof with respect its infringing product/system since that time.

34. Bonerge is therefore liable to NNB for money damages pursuant to 35 U.S.C. § 284 from at least as early as November 6, 2024, but more likely since on or about September 25, 2024, if not the issue date of the '961 Patent. In addition, Bonerge must be deterred from any further violations of NNB's rights in the patent-in-suit through a permanent injunction. Bonerge should also be required to pay NNB's attorneys' fees, expenses, and costs for its willful and blatant disregard of NNB's patent rights.

**COUNT I – PATENT INFRINGEMENT – U.S. PATENT 10,278,961**
**(35 U.S.C. §§ 101 et seq.)**

35. NNB hereby repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 34 above.

36. NNB's '961 Patent (*see* **Exhibit 10**) has at all relevant times subsequent to its issue date been fully enforceable and is now fully enforceable.

37. Subsequent to the issuance of the '961 Patent, Bonerge has directly and/or indirectly infringed the '961 Patent by making, using, importing, offering to sell, and/or selling, and continuing to make, use, import, offer to sell and/or sell dihydroberberine-containing supplements used for managing glucose tolerance and/or reduce fasting glucose levels, which come within the scope of at least one claim of the '961 Patent, and/or that come within a range of equivalents of at least one claim of the '961 Patent, intentionally inducing and/or contributing to the infringing activities of others in the form of their use of dihydroberberine-containing supplements used for managing glucose tolerance and/or reduce fasting glucose levels, as well as the administration by end users of the dihydroberberine-containing supplements used for managing glucose tolerance and/or reduce fasting glucose levels.

38. The making, using, importing, offering to sell, and/or selling of the accused product(s) by Bonerge, including in, from, and/or through its distribution facility in Ontario, California, and/or contributing to and/or inducing the infringing activities of others (including through at least advertising, marketing, promotion, and instructions and information provided to end users and/or installers on, for example, Bonerge's website, product literature), has been without authority or license from NNB and is in violation of NNB's rights under the '961 Patent, thereby infringing the '961 Patent.

39. As set forth above, Bonerge was put on notice of the '961 Patent and its infringement since at least as early as September of 2024, and for at least the same amount of time, Bonerge has been aware of and extensively promoted the use of dihydroberberine in connection with managing glucose tolerance and/or reduce fasting glucose levels, and has encouraged the use of dihydroberberine for those purposes.

40. For the reasons stated elsewhere herein, Bonerge's infringement of NNB's '961 Patent has been, and is, willful, with knowledge of, and in disregard for

the exclusive rights of NNB set forth in its '961 Patent.

41. The amount of money damages due NNB as a result of Bonerge's infringing acts will be determined according to proof at trial, with NNB being entitled to damages adequate to compensate it for the infringements, but in no event less than a reasonable royalty.

42. The harm to NNB arising from Bonerge's acts of infringement of NNB's '961 Patent is not fully compensable by money damages. Rather, NNB has suffered and continues to suffer irreparable harm which has no adequate remedy at law and which will continue unless Bonerge's conduct is enjoined. NNB is therefore also entitled to a preliminary injunction, to be made permanent on entry of the judgment, preventing Bonerge from further acts of infringement.

## **PRAYER FOR RELIEF**

WHEREFORE, NNB demands judgment against Bonerge, as follows:

A. A finding that Bonerge has directly and/or indirectly infringed the patent-in-suit.

B. For an order preliminarily and permanently enjoining Bonerge, and its officers, directors, agents, servants, customers, distributors, re-sellers, affiliates, employees, and contractors, and all other persons acting in concert with it from committing any further acts of infringement, including but not limited to, manufacturing, using, importing, offering to sell, and selling dihydroberberine-containing supplements used for managing glucose tolerance, supporting healthy metabolism, and/or reduce fasting glucose levels, contributing to, inducing, or otherwise aiding, abetting, or assisting others in such infringing activities;

C. For an order directing Bonerge to file with this Court and to serve on NNB within thirty (30) days after service on Bonerge of the injunction granted herein, or such extended period as the Court may direct, a report in writing, under oath, setting forth in detail the manner and form in which Bonerge has complied with the

injunction and order of the Court;

D. For a judgment to be entered for NNB against Bonerge awarding damages adequate to compensate NNB for the infringement, but in no event less than a reasonable royalty;

E. For a judgment awarding to NNB prejudgment and postjudgment interest until the award is fully paid;

F. For a judgment that Bonerge has willfully and deliberately infringed NNB's patent rights, such that it is determined that this is an exceptional case entitling NNB to enhanced damages under the Patent Laws of the United States;

G. For an award to NNB of costs, expenses, and attorneys' fees, incurred in bringing this action under the Patent Laws of the United States; and,

H. For such other and further relief as this Court may deem just and equitable under the circumstances.

Respectfully submitted:

SCHEEF & STONE LLP

Dated: January 31, 2025         By:   /s/ Mark D. Nielsen
                                      Mark D. Nielsen

                                      CISLO & THOMAS LLP
                                      Daniel M. Cislo
                                      C. Wook Pak

                                      Attorneys for Plaintiff,
                                      NANJING NUTRABUILDING BIO-TECH CO., LTD.

## DEMAND FOR JURY TRIAL

NNB hereby demands a trial by jury on all issues raised by the Complaint so triable.

                                            Respectfully submitted:

                                            SCHEEF & STONE LLP

Dated: January 31, 2025        By:   /s/ Mark D. Nielsen
                                                     Mark D. Nielsen

                                            CISLO & THOMAS LLP
                                            Daniel M. Cislo
                                            C. Wook Pak

                                            Attorneys for Plaintiff,
                                            NANJING NUTRABUILDING BIO-TECH CO., LTD.